UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  8:22-cv-02328-JLS-KES                                              Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Gabby Garcia | N/A |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**PROCEEDINGS:   (IN CHAMBERS)   ORDER GRANTING MOTION FOR DEFAULT JUDGMENT (Doc. 42)**

Before the Court is a Motion for Default Judgment filed by Plaintiff New High Ltd.  (Mot., Doc. 42; Mem., Doc. 42-1.)  Having considered the Motion and held oral argument, the Court now GRANTS the Motion for the reasons stated below.

**I.      BACKGROUND**

Plaintiff New High is a Hong Kong corporation that sells and exports garments and textiles.  (Comp. ¶ 4, Doc. 1.)  On November 4, 2021, New High initiated an action against Navpeak, Inc. alleging breach of contract and other claims.  (*Id.* ¶ 16.)  The claims against Navpeak arose because Navpeak failed to make payments on invoices issued by New High for garments and apparel shipped to Navpeak between September 2020 and January 2021.  (*Id.* ¶¶ 8–15.)  Navpeak failed to appear in that action and, on August 19, 2022, this Court entered default judgment against Navpeak in the amount of $244,475.54.  (*Id.* ¶ 17.)

After that entry of judgment, New High served subpoenas on several banks where Navpeak maintained accounts.  (*Id.* ¶ 18.)  The documents received in response revealed

---
**CIVIL MINUTES – GENERAL**
1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02328-JLS-KES                                Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

that Navpeak had transferred considerable sums of money *out* of its bank accounts between March 2021 and June 2021, at a time when it was in arrears on its obligations to New High and New High was demanding immediate payment.  (*Id.* ¶¶ 11, 19.)  Several of those transfers were to Navpeak insiders: David Lalwani, Navpeak's General Manager; Sebastian Maria Schildhorn, Navpeak's Chief Executive Officer; and Blizzard SA, Inc., a California corporation whose Chief Financial Officer, Bill Li, also served as the Chief Financial Officer of Navpeak.  (*Id.* ¶¶ 5, 6, 7, & 20.)  On December 29, 2022, New High initiated this action against Lalwani, Schildhorn, and Blizzard, alleging promissory fraud and fraudulent transfer and requesting that the Court void the transfers and award New High the money.  (*See generally id.*)

New High ultimately dismissed Lalwani from the action and proceeded only as to Schildhorn and Blizzard.  (Notice of Dismissal, Doc. 24.)  New High had some trouble locating Defendants.  As a result, the Court authorized service of process on Blizzard via delivery to the California Secretary of State, pursuant to California Corporations Code § 1702(a).  (Order, Doc. 17.)  New High served Blizzard on February 24, 2023.  (Proof of Service, Doc. 19.)  The Court then authorized service of process on Schildhorn via publication in the Las Vegas Review-Journal.  (Order, Doc. 32.)  New High filed proof of service on October 18, 2023, demonstrating compliance with the rules for service by publication.  (Proof of Service, Doc. 38.)  Neither Blizzard nor Schildhorn ever appeared, and the Clerk entered default against both.  (*See* Entry of Default, Docs. 22 & 40.)

New High now moves for an entry of default judgment against Schildhorn and Blizzard.  In support of the allegations in its Complaint, New High originally provided the Declaration of Lawrence J. Hilton and two exhibits in support.  (*See* Hilton Decl., Doc. 42-2; Ex. 1, Doc. 42-3; Ex. 2, Doc. 42-4.)  The Court could not confirm the accounting calculations provided in that declaration and asked New High to provide more complete banking records and a more thorough declaration.  New High then provided the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:22-cv-02328-JLS-KES | Date: February 07, 2024 |
| Title:  New High Limited v. David Lalwani, et al. | |

Supplemental Declaration of Taylor Foss, which attached three exhibits.  (*See* Foss Decl., Doc. 45.)  The first Exhibit is a copy of Navpeak's account statements for a bank account it maintained with Wells Fargo.  (*See* Foss Decl. ¶ 6; Ex. 1 to Foss Decl., Doc. 45-1.)  The second Exhibit is a copy of branch withdrawal records for the Wells Fargo bank account.  (*See* Foss Decl. ¶ 7; Ex. 2 to Foss Decl., Doc. 45-2.)  The third Exhibit is a copy of Navpeak's account statements for a bank account it maintained with East West.  (*See* Foss Decl. ¶ 8; Ex. 3 to Foss Decl., Doc. 45-3.)

The Wells Fargo account statements demonstrate that $100,640 was withdrawn at branch locations between March 2021 and May 2021, and the withdrawal records show that Schildhorn signed each withdrawal request.  (*See* Exs. 1 & 2 to Foss Decl.)  The Wells Fargo account statements also show that $210,000 was wired to Blizzard on April 19, 2021.  (Ex. 1 to Foss Decl. at 15.)  But in the Declaration of Taylor Foss, New High identifies $76,000 in "offsetting deposits"—payments made from Blizzard to Navpeak.  (Foss Decl. ¶¶ 16–21.)  The account statements from East West confirm that in April, May, and June of 2021, Blizzard wired money to Navpeak.  (Ex. 3 to Foss Decl. at 81, 90, 99.)  Based on these offsets, New High calculates that a net sum of $134,000 was transferred to Blizzard during this time frame.  (Mem. at 4–5.)  The account statements show that on June 18, 2021, Navpeak drained its Wells Fargo account and closed it.  (Ex. 1 to Foss Decl. at 25.)  Meanwhile, Navpeak's East West account was zeroed in August 2021.  (Ex. 3 to Foss Decl. at 125.)

**II.    LEGAL STANDARD**

Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process: an entry of default judgment must be preceded by an entry of default.  *See* Fed. R. Civ. P. 55; *see also Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  Upon entry of default, the factual allegations of the complaint, save for those concerning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:22-cv-02328-JLS-KES | Date: February 07, 2024 |
| Title:  New High Limited v. David Lalwani, et al. | |

damages, are deemed to have been admitted by the defaulting party. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(b)(6). "On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *United States v. Cathcart*, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010) (internal citation omitted). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

A court has discretion to grant or deny a motion for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has set forth seven factors to be considered by courts in reviewing a motion for default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *Eitel,* 782 F.2d at 1471-72.

### III.   ANALYSIS

#### A.   Local Rule 55-1

New High's Motion complies with Local Rule 55-1. New High states that the clerk entered defaults against Blizzard on March 22, 2023, and against Schildhorn on October 27, 2023; that Defendants are not infants or incompetent persons; and that the Servicemembers Civil Relief Act does not apply. (Mem. at 6.)  New High did not originally serve notice of its motion on Defendants but, in the Declaration of Taylor Foss, New High represents that on January 25, 2024, it sent copies of the motion to Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02328-JLS-KES                                          Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

at their last known email addresses.  (Foss Decl. ¶ 24.)  Because Federal Rule of Civil Procedure 55 requires service only when a defendant has appeared in the action and here, neither Blizzard nor Schildhorn ever appeared, the slightly delayed service is not dispositive.  The Court therefore analyzes the *Eitel* factors to determine whether entry of default judgment is appropriate.

    **B.**     ***Eitel* Factors**

        **1.**     **Prejudice to Plaintiff**

As to the first *Eitel* factor, a plaintiff is prejudiced if default judgment is denied in a case where the defendant refuses to defend itself.  Blizzard and Schildhorn have failed to appear in this action, and New High has no recourse to obtain the amount it is owed if default judgement is denied.  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (prejudice is shown if denying default judgment would leave plaintiff without a remedy).  Therefore, this factor weighs in favor of default judgment.

        **2.**     **Merits of Claim and Sufficiency of Complaint**

The second and third *Eitel* factors look at (1) the merits of a plaintiff's substantive claims and (2) the sufficiency of the complaint.  *Eitel*, 782 F.2d at 1471.  These two factors require that plaintiff "state a claim on which [it] may recover."  *PepsiCo, Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal quotation omitted).  "In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default."  *Bd. of Trustees of Sheet Metal Workers v. Moak*, 2012 WL 5379565, at *2 (N.D. Cal. Oct. 31, 2012) (citing *Geddes*, 559 F.2d at 560).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02328-JLS-KES                                    Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

Here, New High's Complaint brings claims for promissory fraud and fraudulent transfer, but the Motion focuses only on the allegations for fraudulent transfer. (*Compare* Compl. ¶¶ 21–30 *to* Mem. at 7–10.) "A fraudulent transfer under the UVTA 'is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.'" *Potter v. All. United Ins. Co.*, 37 Cal. App. 5th 894, 903–04 (2019) (quoting *Kirkeby v. Superior Court*, 33 Cal. 4th 642, 648 (2004)). A fraudulent transfer "is voidable as to the creditor." Cal. Civ. Code § 3439.04. "Under the U[V]TA, a transfer can be invalid either because of actual fraud or constructive fraud." *Potter*, 37 Cal. App. 5th at 904 (internal citations omitted) (alteration in original) (quoting *Mejia v. Reed*, 31 Cal. 4th 657, 661 (2003)).

To prove that a transfer is invalid due to actual fraud, a plaintiff must show that "the debtor made the transfer or incurred the obligation … [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a). To prove that a transfer is invalid due to constructive fraud, a plaintiff must show that the transfer was made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." *Id.* Further, the debtor must have intended to incur debts beyond the debtor's ability to pay, or been "engaged" or "about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." *Id.* Several factors are relevant to determining the debtor's actual intent including, as relevant here: (1) "[w]hether the transfer or obligation was to an insider"; (2) "[w]hether the transfer or obligation was disclosed or concealed"; (3) "[w]hether the transfer was of substantially all the debtor's assets; (4) "[w]hether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; and (5) "[w]hether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." *Id.* § 3439.04(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02328-JLS-KES                                                            Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

     The Court finds that the allegations in the Complaint are sufficient to state a claim for fraudulent transfer.  The Complaint alleges that, in January 2021, "Navpeak was substantially in arrears on its obligations to New High, and New High was demanding immediate payment of a substantial portion of the unpaid balance," meaning that New High had a valid creditor claim to Navpeak's assets.  (Compl. ¶ 11.)  The previous default judgment entered against Navpeak established that Navpeak owed New High $244,475.54.  (Mem. at 4.)  The Complaint also alleges that New High did not learn of these transfers out of Navpeak's accounts until post-judgment discovery in the action against Navpeak, suggesting the transfers were concealed.  (Compl. ¶¶ 18–20.)

     As to Schildhorn, the Complaint alleges that "[b]etween March 15, 2021, and June 21, 2021, at least $100,640 were transferred to Schildhorn through cash withdrawals Schildhorn made from Navpeak's account at Wells Fargo Bank."  (*Id.* ¶ 35.)  The Exhibits attached to the Supplemental Declaration confirm that large cash withdrawals, totaling $100,640, were taken from Navpeak's Wells Fargo account by Schildhorn.  (*See* Exs. 1 & 2 to Foss Decl.)  When Schildhorn withdrew $30,880 on May 26, 2021, he left Navpeak with only about $18,000 in that account and Navpeak drained and closed the Wells Fargo account less than a month later.  (*See* Ex. 1 to Foss Decl. at 21, 25.)  Similarly, in March, April, and May of 2021, Navpeak's East West account ended each month with a negative account balance and then was zeroed in August.  (*See* Ex. 3 to Foss Decl. at 72, 81, 89, 125.)  Schildhorn's withdrawals therefore represented a substantial portion of Navpeak's assets and Navpeak became insolvent shortly after.  The Complaint alleges that Schildhorn was the Chief Executive Officer of Navpeak, meaning these transfers were to an insider.  (Compl. ¶ 7.)  The Complaint further alleges that "no reasonably equivalent value was given in exchange" for these withdrawals and that the withdrawals "were made with an actual intent to hinder, delay, or defraud New High" in its attempts to collect payments owed.  (*Id.* ¶¶ 37, 38.)  These allegations are well-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:22-cv-02328-JLS-KES | Date: February 07, 2024 |
| Title: New High Limited v. David Lalwani, et al. | |

pleaded and, having been deemed admitted by Schildhorn's default, sufficient to establish the elements of fraudulent transfer. The factors for actual intent support that Navpeak intended to hinder, delay, or defraud New High with these transfers to Schildhorn. In the alternative, the factual allegations also establish that Schildhorn did not receive anything of reasonably equivalent value in the exchange and that Navpeak's remaining assets—$18,000 after Schildhorn's final withdrawal—were unreasonably small given that Navpeak owed $244,475.54 to New High at that time.

As to Blizzard, the Complaint alleges that "[b]etween April 8, 2021 and June 21, 2021, the net sum of at least $134,000 was transferred from Navpeak's account at Wells Fargo Bank to Blizzard." (*Id.* ¶ 36.) The Exhibits attached to the Supplemental Declaration confirm that, on April 19, 2021, Navpeak wired $210,000 from its Wells Fargo account to Blizzard. (*See* Ex. 1 to Foss Decl. at 15.) But this was not a one-way transaction; Blizzard also wired money to Navpeak on April 8, April 14, May 21, and June 21, 2021. (Ex. 3 to Foss Fecl. at 81, 90, 99.) These transfers from Blizzard resulted in $76,000 of offsetting deposits, meaning that Navpeak transferred a net total of $134,000 to Blizzard at a time when it owed money to New High. (*See* Exs. 1 & 3 to Foss Decl.) Therefore, the allegations as to Blizzard are also well-pleaded and sufficient to establish fraudulent transfer. The Complaint alleges that Bill Li served as the Chief Financial Officer of both Blizzard and Navpeak, suggesting that Blizzard had an insider connection with Navpeak. (Compl. ¶ 5.) And after Navpeak wired $210,000 to Blizzard, it was left with only about $11,000 in its Wells Fargo account and a negative balance in its East West account. (*See* Ex. 1 to Foss Decl. at 15; Ex. 3 to Foss Decl. at 87.) The transfer represented a substantial portion of Navpeak's assets, and the Complaint alleges that Navpeak was either insolvent at the time or became insolvent as a result of transfer. (Compl. ¶ 43.) Navpeak's insolvency here is not as clear cut as its insolvency following Schildhorn's withdrawals; notably the Wells Fargo account balance recovered throughout April and May and the East West account balance recovered in June. (*See* Ex. 1 to Foss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02328-JLS-KES                                    Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

Decl. at 16, 20–21; Ex. 3 to Foss Decl. at 109.)  But the Complaint also alleges that Navpeak received no "reasonably equivalent value" from Blizzard for this transfer and that the transfer served to make Navpeak's debts greater than its assets.  (*Id.* ¶¶ 43, 44.)  Though actual fraudulent intent may not have been established, these factual allegations meet the elements of fraudulent transfer by constructive fraud.

Thus, this factor weighs in favor of entering default judgment against Defendants.

### 3. Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  Except for litigation costs, New High seeks damages arising from Navpeak's fraudulent transfers.  In support, New High proffers evidence to show that the voidable transfers occurred in the amount requested.  (*See* Exs. 1, 2 & 3 to Foss Decl.)  Having carefully considered New High's evidence, the Court concludes that the damages it seeks are consistent with the fraudulent transfers made and are otherwise appropriate.

### 4. Possibility of Dispute Concerning Material Facts

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case."  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010).  "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012); *see also Landstar Ranger*, 725 F. Supp. at 922 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02328-JLS-KES                                           Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

As discussed, New High has adequately pleaded its claim for fraudulent transfer. Defendants have failed to appear.  Since New High has offered evidence in support of its claims and Defendants have not challenged the factual allegations against them, no factual disputes exist that preclude the entry of default judgment.

### 5. Possibility of Excusable Neglect

As to the sixth *Eitel* factor, no excusable neglect justifies Defendants' failure to defend themselves in this action.  Even where personal service of a summons and complaint is not achieved, the likelihood of excusable neglect is remote where a defendant has been served through alternative means and received notice of the motion for default judgment.  *See*, *e.g.*, *Trader Joes Co. v. T-Shirt AT Fashion LLC*, 2023 WL 9420440, at *4 (C.D. Cal. Dec. 20, 2023) (permitting service of summons and complaint by email and finding "no indication of excusable neglect"); *Namecheap, Inc. v. Amecheap.com*, 2013 WL 12131574, at *5 (C.D. Cal. Jan. 3, 2013) (permitting service of summons and complaint by email, observing that Defendants did nothing to resolve the matter, and concluding "that Defendants' default was the result of an affirmative decision not to litigate the action").  Here, both Defendants were served in manners permitted by law, but they failed to appear or defend, and default was entered against them.  Notice of this motion was ultimately emailed to them, and they still took no action.  Without any evidence of excusable neglect, this factor favors entry of default judgment.

### 6. Policy Favoring Decisions on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craiglist*, 694 F. Supp. 2d at 1061.  Although "[c]ases should be decided upon their merits whenever reasonably possible[,]" *Eitel*, 782 F.2d. at 1472, "[u]nder [Rule 55], termination of a case before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02328-JLS-KES                                          Date: February 07, 2024
Title:  New High Limited v. David Lalwani, et al.

hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo*, 238 F. Supp. 2d at 1177.  In the instant matter, Defendants have forfeited their opportunity to defend themselves on the merits; therefore, the seventh *Eitel* factor does not preclude default judgment.

### 7. Conclusion Regarding *Eitel* Factors

In sum, aside from the policy of deciding cases on the merits, the *Eitel* factors weigh in favor of entering default judgment on New High's claims for fraudulent transfer against Schildhorn and Blizzard, and the final factor does not preclude default judgment in this matter.  Accordingly, the Court GRANTS New High's Motion for entry of default judgment as to Blizzard and Schildhorn.

### C. Damages

The Court awards damages in favor of New High against Blizzard in the amount of $134,000 and against Schildhorn in the amount of $100,640, representing the amount of voidable fraudulent transfers made by Navpeak to Defendants.

## IV. CONCLUSION

For the above reasons, the Court GRANTS New High's Motion for Default Judgment against Blizzard and Schildhorn.  New High is awarded a total sum of $234,640 and may apply to tax costs pursuant to Federal Rule of Civil Procedure 54 and Local Rule 54-2.  New High shall file a proposed final judgment reflecting the Court's decision within **five (5) days** of the entry of this Order.

Initials of Deputy Clerk: gga